**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**SAROYA MARROW,**

    **Plaintiff,**

                                    **CASE NO.:**

**v.**

**C&S WHOLESALE GROCERS, LLC
d/b/a WINN-DIXIE DISTRIBUTION CENTER,**

    **Defendant.**
_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, SAROYA MARROW, by and through undersigned counsel, brings this action against Defendant, C&S WHOLESALE GROCERS, LLC d/b/a WINN-DIXIE DISTRIBUTION CENTER and in support of her claims states as follows:

**JURISDICTION AND VENUE**

1. This is an action for damages for violations of the Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Florida Civil Rights Act of 1992, as amended ("FCRA"), Fla. Stat. Section 760.01 *et seq.*

2. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. § 2000e *et seq.*

3. Venue is proper in the Middle District of Florida, because all of the events giving rise to these claims occurred in Hillsborough County, Florida.

## PARTIES

4. At all times relevant hereto, Plaintiff was a resident of Hillsborough County, Florida.

5. Defendant is a company that operates in Hillsborough County, Florida.

## GENERAL ALLEGATIONS

6. At all times material hereto, Plaintiff was an "employee" of Defendant within the meaning of Title VII and the FCRA.

7. At all times material hereto, Defendant employed fifteen (15) or more employees. Thus, Defendant is an "employer" within the meaning of Title VII and the FCRA.

8. Plaintiff has satisfied all conditions precedent, or they have been waived.

9. Plaintiff has hired the undersigned attorneys and agreed to pay them a fee.

10. Plaintiff requests a jury trial for all issues so triable.

## FACTS

### *Plaintiff is in a Protected Class Due to Her Sex*

11. Plaintiff is a female.

12. Thus, Plaintiff is a member of a protected class, and on account of her protected status, Plaintiff benefits from the protections of Title VII and the FCRA.

### *Plaintiff was Qualified for Her Employment Position with Defendant*

13. Plaintiff began working for Defendant in or around November 2023 as an auditor for quality control, eventually transferring into a position as a shipping clerk, and she worked in this capacity until her termination on or around June 11, 2025.

14. Plaintiff was qualified for her position and performed her job in a satisfactory manner.

15. Plaintiff was excelling in her employment duties, even receiving Employee of the Month at least three times from three different supervisors.

16. Ultimately, Plaintiff received a promotion to shipping clerk and became responsible for dispatching trailers from the warehouse.

### *Plaintiff Suffered Adverse Employment Action*

17. During her employment, Plaintiff was subjected to disparate treatment on the basis of her sex, and sexual harassment.

18. Prior to beginning her position as a shipping clerk, while Plaintiff was still waiting for someone to fill her current role of quality control auditor, she began working on Saturdays and was typically alone in her office.

19. On or around Saturday, January 25, 2025, while Plaintiff was working alone in her office, another employee, Richard Wisack, entered her office and began speaking with Plaintiff.

20. As Richard lingered in Plaintiff's office, Plaintiff began feeling uncomfortable.

21. Plaintiff informed her supervisor about this interaction, informing Defendant that it made her uncomfortable.

22. Around one week later, Richard entered Plaintiff's office again while she was alone.

23. Richard stood behind Plaintiff and grabbed her by the neck with both of his hands.

24. Richard then began to massage her shoulders.

25. However, Plaintiff objected and put her hand up, requesting that he back away from her.

26. Richard then stated, "I just came in here to talk about the truck load" and asked Plaintiff a work-related question.

27. Plaintiff responded to Richard's question, raised her hand, and asked him to leave her office.

28. Rather than leaving, Richard placed his hand on Plaintiff hand and began to rub Plaintiff's hand.

29. Plaintiff then moved her hand away and asked Richard to only speak to her outside of her office.

30. Immediately after this interaction, Plaintiff objected to this sex discrimination and sexual harassment by emailing her supervisor to complain about Richard's behavior.

31. Richard then returned to Plaintiff's office on this same day, asking if Plaintiff can do him a "weird favor" but Plaintiff responded, "no."

32. Richard then asked Plaintiff to put band-aids behind his ears and Plaintiff stated, "no, I will not be touching you."

33. Plaintiff then called her supervisor, again, expressing her discomfort with Richard's actions, and asked her supervisor what can be done about the situation.

34. Plaintiff's supervisor then told Plaintiff that this is the last Saturday that Plaintiff will work, so that Plaintiff did not have to work alone with Richard in the future.

35. Soon thereafter, Defendant's Human Resources Department ("HR") contacted Plaintiff to discuss what had occurred with Richard.

36. They informed Plaintiff that Richard admitted touching Plaintiff and that he "is sorry about it."

37. HR also informed Plaintiff that Richard is effectively Plaintiff's supervisor in her new role.

38. Further, HR informed Plaintiff that although policy provides that they should terminate Richard's employment, they will not do so, because Defendant cannot afford to do this.

39. HR asked Plaintiff if she still wanted to start her new position.

40. Plaintiff was concerned that if she continued to express that she did not feel comfortable working with Richard, then she would not be given the new promotion.

41. Despite being aware of Richard's sexually harassing behavior toward Plaintiff, Plaintiff's supervisor, Carter, simply informed Plaintiff that if Richard made any further advances, Plaintiff should "just tell him no."

42. Again, Plaintiff expressed to Defendant her objections to Richard's sexual harassment of her, and requested that Defendant please instruct Richard not to touch Plaintiff.

43. Several weeks later, Plaintiff began her new position.

44. On or around May 14 and 15, 2025, Plaintiff suffered a panic attack at work, and left work early due to this.

45. On or around May 22, 2025, Richard began antagonizing Plaintiff once more.

46. Specifically, when Plaintiff began her lunch break, Richard began to question Plaintiff on how she completes her paperwork and was very insistent.

47. Plaintiff objected to Richard's disparate treatment of her, stating to Richard that she felt he was antagonizing her.

48. Plaintiff then complained to her supervisors, Alex, Felix, and Chris, stating that Richard was antagonizing her.

49. Chris acknowledged that he had overheard the conversation between Plaintiff and Richard, and had also felt that Richard was antagonizing Plaintiff.

50. Soon thereafter, Monique went to Plaintiff's desk and grabbed all of Plaintiff's paperwork off of her desk, also in an effort to antagonize Plaintiff.

51. Plaintiff's supervisor, Carver, saw this, put the paperwork back on Plaintiff's desk and told Monique to leave Plaintiff alone.

52. Plaintiff had been scheduled to take paid time off on June 6 – June 4, 2025.

53. However, when Plaintiff returned from PTO, Defendant falsely claimed that this PTO had not been approved.

54. Defendant also claimed that Plaintiff "went missing" from 10pm – 12am on June 5, 2025.

55. Chris told Defendant that Plaintiff was "gone" for these two hours, but Plaintiff vehemently denies this.

56. Rather, Plaintiff was actually in her supervisor, Alvin's office, speaking with him about her PTO.

57. On or around June 5, 2025, Defendant suspended Plaintiff, due to Plaintiff's sex and in retaliation for having engaged in protected activity.

58. Plaintiff objected to this suspension, which was for entirely pretextual reasons.

59. Shortly thereafter, on or around June 11, 2025, Plaintiff's employment was terminated, due to the pretextual reasons of her PTO having supposedly not been approved—despite the fact that it had been—and Plaintiff having "gone missing" for two hours, when she was actually in her supervisor's office.

60. Defendant's termination of Plaintiff's employment was based on Plaintiff's sex and was in retaliation for Plaintiff having engaged in protected activity.

## COUNT I – TITLE VII VIOLATION
### (SEX DISCRIMINATION)

61. Plaintiff realleges and readopts the allegations of paragraphs 6 through 57, and 59 through 60 of this Complaint, as though fully set forth herein.

62. Plaintiff is a member of a protected class under Title VII.

63. Plaintiff was subjected to disparate treatment on the basis of sex, including suspension and, finally, termination.

64. Defendant's actions were willful and done with malice.

65. Plaintiff was injured due to Defendant's violations of Title VII, for which Plaintiff is entitled to legal and injunctive relief.

*WHEREFORE*, Plaintiff demands:

    a) A jury trial on all issues so triable;

    b) That process issue and that this Court take jurisdiction over the case;

    c) An injunction restraining continued violation of Title VII by Defendant;

    d) Compensation for lost wages, benefits, and other remuneration;

  e) Reinstatement of Plaintiff to a position comparable to Plaintiff's prior position, or in the alternative, front pay;

  f) Any other compensatory damages, including emotional distress, allowable at law;

  g) Punitive damages;

  h) Prejudgment interest on all monetary recovery obtained.

  i) All costs and attorney's fees incurred in prosecuting these claims; and

  j) For such further relief as this Court deems just and equitable.

## COUNT II – TITLE VII VIOLATION
## (SEXUAL HARASSMENT)

66. Plaintiff realleges and readopts the allegations of paragraphs 6 through 44, 57, and 59 through 60 of this Complaint, as though fully set forth herein.

67. Plaintiff is a member of a protected class under Title VII based on her sex.

68. Plaintiff was subjected to unwelcome harassment on the basis of sex, including continued, unwanted sexual advances and unwanted touching from a supervisor.

69. Defendant was aware of this sexual harassment, yet failed to take remedial action.

70. The harassment suffered by Plaintiff was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment with Defendant, up to and including the termination of Plaintiff's employment.

71. Defendant knew or should have known of the unwelcome harassment suffered by Plaintiff, and failed to intervene or to take prompt and effective remedial action in response.

72. Defendant's actions were willful and done with malice.

73. Plaintiff was injured due to Defendant's violations of Title VII, for which Plaintiff is entitled to legal and injunctive relief.

**WHEREFORE**, Plaintiff demands:

    a) A jury trial on all issues so triable;

    b) That process issue and that this Court take jurisdiction over the case;

    c) An injunction restraining continued violation of Title VII by Defendant;

    d) Compensation for lost wages, benefits, and other remuneration;

    e) Reinstatement of Plaintiff to a position comparable to Plaintiff's prior position, or in the alternative, front pay;

    f) Any other compensatory damages, including emotional distress, allowable at law;

    g) Punitive damages;

    h)    Prejudgment interest on all monetary recovery obtained.

    i)    All costs and attorney's fees incurred in prosecuting these claims; and

    j)    For such further relief as this Court deems just and equitable.

### COUNT III – TITLE VII RETALIATION

74. Plaintiff realleges and readopts the allegations of paragraphs 6 through 60 of this Complaint, as though fully set forth herein.

75. Plaintiff is a member of a protected class under Title VII.

76. Plaintiff exercised or attempted to exercise her rights under Title VII, by objecting to sex discrimination, sexual harassment, and retaliation, thereby engaging in protected activity under Title VII.

77. Defendant retaliated against Plaintiff for engaging in protected activity under Title VII by initially suspending Plaintiff, and then terminating Plaintiff's employment.

78. Defendant's actions were willful and done with malice.

79. Defendant took material adverse action against Plaintiff.

80. Plaintiff was injured due to Defendant's violations of Title VII, for which Plaintiff is entitled to legal and injunctive relief.

**WHEREFORE**, Plaintiff demands:

    a)    A jury trial on all issues so triable;

    b)    That process issue and that this Court take jurisdiction over the case;

    c)    That this Court enter a declaratory judgment, stating that Defendant retaliated against Plaintiff for exercising her rights under Title VII;

    d)    That this Court enter an injunction restraining continued violation of Title VII by Defendant;

    e)    Compensation for lost wages, benefits, and other remuneration;

    f)    Reinstatement of Plaintiff to a position comparable to Plaintiff's prior position, with back pay plus interest, pension rights, seniority rights, and all fringe benefits;

    g)    Front pay;

    h)    Any other compensatory damages, including emotional distress, allowable at law;

    i)    Punitive damages;

    j)    Prejudgment interest on all monetary recovery obtained.

    k)    All costs and attorney's fees incurred in prosecuting these claims; and

    l)    For such further relief as this Court deems just and equitable.

## **COUNT IV – FCRA VIOLATION**
## **(SEX DISCRIMINATION)**

81. Plaintiff realleges and readopts the allegations of paragraphs 6 through 57, and 59 through 60 of this Complaint, as though fully set forth herein.

82. Plaintiff is a member of a protected class (sex) under the FCRA.

83. Plaintiff was subjected to disparate treatment by Defendant on the basis of her sex, including suspension and termination.

84. Defendant's actions were willful and done with malice.

85. Plaintiff was injured due to Defendant's violations of the FCRA, for which Plaintiff is entitled to legal and injunctive relief.

*WHEREFORE*, Plaintiff demands:

a) A jury trial on all issues so triable;

b) That process issue and that this Court take jurisdiction over the case;

c) Compensation for lost wages, benefits, and other remuneration;

d) Front pay;

e) Any other compensatory damages, including emotional distress, allowable at law;

f) Punitive damages;

g) Prejudgment interest on all monetary recovery obtained.

  h) All costs and attorney's fees incurred in prosecuting these claims; and

  i) For such further relief as this Court deems just and equitable.

## COUNT V – FCRA VIOLATION
## (SEXUAL HARASSMENT)

86. Plaintiff realleges and readopts the allegations of paragraphs 6 through 44, 57, and 59 through 60 of this Complaint, as though fully set forth herein.

87. Plaintiff is a member of a protected class under FCRA based on her sex.

88. Plaintiff was subjected to unwelcome harassment on the basis of sex, including continued, unwanted sexual advances and unwanted sexual touching from a supervisor.

89. Defendant was aware of these unwanted sexual advances, yet failed to take remedial action.

90. The harassment suffered by Plaintiff was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment with Defendant, up to and including the termination of Plaintiff's employment.

91. Defendant knew or should have known of the unwelcome harassment suffered by Plaintiff, and failed to intervene or to take prompt and effective remedial action in response.

92. Defendant's actions were willful and done with malice.

93. Plaintiff was injured due to Defendant's violations of FCRA, for which Plaintiff is entitled to legal and injunctive relief.

**WHEREFORE**, Plaintiff demands:

    a) A jury trial on all issues so triable;

    b) That process issue and that this Court take jurisdiction over the case;

    c) Compensation for lost wages, benefits, and other remuneration;

    d) Front pay;

    e) Any other compensatory damages, including emotional distress, allowable at law;

    f) Punitive damages;

    g) Prejudgment interest on all monetary recovery obtained.

    h) All costs and attorney's fees incurred in prosecuting these claims; and

    i) For such further relief as this Court deems just and equitable.

## COUNT VI – FCRA RETALIATION

94. Plaintiff realleges and readopts the allegations of paragraphs 6 through 60 of this Complaint, as though fully set forth herein.

95. Plaintiff is a member of a protected class under the FCRA.

96. Plaintiff engaged in protected activity under the FCRA by opposing Defendant's discrimination, sexual harassment, and retaliation against Plaintiff.

97. Defendant retaliated against Plaintiff for engaging in protected activity under the FCRA by suspending and then, ultimately, terminating Plaintiff's employment.

98. Defendant's actions were willful and done with malice.

99. By terminating Plaintiff, Defendant took material adverse action against Plaintiff.

100. Plaintiff was injured due to Defendant's violations of the FCRA, for which Plaintiff is entitled to legal and injunctive relief.

***WHEREFORE***, Plaintiff demands:

    a) A jury trial on all issues so triable;

    b) That process issue and that this Court take jurisdiction over the case;

    c) That this Court enter a declaratory judgment, stating that Defendant interfered with Plaintiff's rights under the FCRA;

    d) Compensation for lost wages, benefits, and other remuneration;

    e) Reinstatement of Plaintiff to a position comparable to her prior position, with back pay plus interest, pension rights, and all benefits;

    f) Front pay;

    g) Any other compensatory damages, including emotional distress, allowable at law;

      h)    Punitive damages;

      i)    Prejudgment interest on all monetary recovery obtained.

      j)    All costs and attorney's fees incurred in prosecuting these claims; and

      k)    For such further relief as this Court deems just and equitable.

## JURY TRIAL DEMAND

Plaintiff demands trial by jury as to all issues so triable.

Dated this 13th day of February, 2026.

          Respectfully submitted,

          */s/ Brandon J. Hill*
          **BRANDON J. HILL**
          Florida Bar No: 37061
          **HANNAH E. DeBELLA**
          Florida Bar No: 1026002
          **Wenzel Fenton Cabassa P.A.**
          1110 N. Florida Avenue, Suite 300
          Tampa, Florida 33602
          Main No.: 813-224-0431
          Direct No.: 813-337-7992
          Facsimile No.: 813-229-8712
          Email: bhill@wfclaw.com
          Email: hdebella@wfclaw.com
          Email: aketelsen@wfclaw.com
          Attorneys for Plaintiff